## WILLIAM PARKER
### v.
## AMANDA PARKER.

*Divorce—Desertion—Collusion—Division of Property—Contract.*

A contract between husband and wife, dividing their property, in consideration of her refusal to live with him longer, entered into after he had made every reasonable effort to induce her to return to him, does not show collusion on his part for her to live separate and apart from him.

[Opinion filed May 28, 1888.]

APPEAL from the Circuit Court of Winnebago County; the Hon. O. H. HORTON, Judge, presiding.

Parker v. Parker.

Mr. N. C. WARNER, for appellant.

No appearance for appellee.

LACEY, J. This was a bill originally filed by appellee for separate maintenance, and afterward, cross-bill by appellant for divorce on the ground of desertion.

The appellee failed to answer the cross-bill and default was entered against her. Upon hearing, the court dismissed the original and cross-bill for want of equity, from which decree this appeal is taken.

The refusal of the court to grant appellant a decree of divorce is assigned for error. The appellant was a man seventy-eight years of age and had been married previously and divorced; the appellee was some fifty-one years of age and had also been previously married and had been divorced, but had borne her first husband four children. The parties herein were married in August, 1882. They lived together peaceably until the 9th of July, 1885, when appellee, being somewhat ailing and subject to bad spells, left the appellant's house and went to her daughter's. The arrangement was that if she did not return appellant was to go after her; she did not return and appellant went for her according to arrangement. He did not wish her to stay but she refused to go home. He went after her several times after that and tried to get her to go home without avail. "He came six or eight times—came every day," says appellee's daughter. The appellee would not give her husband any answer whether she would go back home and live with him or not. In the meantime he had been staying alone at home. On the 15th July, 1885, she and Jessie, her daughter, came up to his place. He tried to get her to come back but she would not, and insisted on having a settlement of the property to fix it up. Appellant asked her what she wanted. He wanted her to be content to stay with him but she would not, so he finally told her that he would give her $25 and the household furniture. She wanted him to relinquish his claim on her property and she would on his. So the division of the property was made on

this basis. Each of them owned real estate worth from eight to twelve hundred. He could not say that he knew the cause of his wife leaving him. He thought her children were jealous for fear he would spend his wife's property and they would get none of it. He always treated his wife kindly and she did him to his face. He always provided for his family and when she wanted anything she had the money in her pocket to pay for it. The agreement was reduced to writing, and declared it was entered into in consideration that she had refused to live with him longer and had left him, and in consideration that she would not tax his credit, while they lived apart, for her support, he gave her the $25 and the furniture.

The appellant gave in his testimony in open court and the court cross-examined him, and asked him whether at the time the paper was made there was any understanding between them that they were to live separate, and the appellant answered that as he understood it they were to live separate. The court asked: "And this was an agreement and settlement of property to live separate after that?" Appellant answered: "Well, I was ready to live with her at any time." The court: "Was not that the intention of the agreement between you?" Answer: "I think it was the understanding that we were not to live together any more." And the court continued: "That being a final settlement of your affairs?" Answer: "I suppose so, unless she took a notion to come back."

Upon this state of facts it appeared that the court held there was collusion and a mutual agreement between the appellant and appellee to live separate and apart. Hence there could be no desertion as claimed in the bill. We are inclined to take a different view of the evidence. The appellant in all his evidence appears to be frank and truthful and is corroborated by all the other evidence in his statement of the facts, even by appellee's own daughter. It appears that he made every reasonable effort to induce his wife to return and she refused and would not give him any answer whether she would ever come back. No doubt she was politic in this as she wanted to get an advantageous compromise. A division

of the property was what she wanted. He, no doub⁺, felt that there was no hope of her ever returning and we think the preponderance of the evidence justified him in so thinking. There is no evidence going to show that he desired a separation but simply yielded to the necessities of the case, and to save himself greater loss, as he thought, made the required division of the property. It seems to us he has tried throughout to do what was right and just by the appellee. She has never made any complaints, so far as the evidence shows, of his treatment of her. We think there was no collusion on his part for her to live separate and apart from him. It was a matter of necessity on his part. As he says he has always held himself in readiness to live with her but she still lives apart from him. We must hold, under the circumstances, that the appellant has made out a case of desertion by, at least, a preponderance of the evidence, and that he is entitled to a divorce under the statute. This is a case that rests mostly on the evidence and its peculiar facts, but we find support for the view we have taken in a case decided by the Supreme Court of the State of Michigan, which in its facts is quite similar to the facts in this case, and where it was held that the charge of desertion was made out. See Staffer v. Staffer, 50 Mich. 491-2. The decree of the court below is therefore reversed, and the cause remanded with direction to the court below to grant a decree of divorce as is prayed for in appellant's cross-bill.

*Reversed and remanded.*